**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

ROXANNA F. GLASSCOCK,

    Plaintiff,

vs.

CAROLYN W. COLVIN, *Commissioner of Social Security,*

    Defendant.

2:13-cv-01253-APG-VCF

**ORDER**

This matter involves Plaintiff Roxanna F. Glasscock's appeal from Defendant Carolyn W. Colvin's final decision denying Glasscock social security benefits. (Compl. (#3) at 2:21- 3:8) Currently before the court is Glasscock's motion to remand. (#15). Colvin filed an opposition and cross motion to affirm. (#18 & 19).

## **BACKGROUND**

This action arises under the Social Security Act, Titles II and XVI. Glasscock filed an application for a period of disability, disability insurance benefits, and supplemental security income on July 2, 2009 alleging an onset of disability from November 30, 2007. AR[1] 150-156 and 157-163. The Commissioner denied the applications, determining that Glasscock is not disabled and capable of performing alternative work at step five of the sequential disability analysis. AR 15-42. Glasscock disagrees with that determination arguing that the ALJ committed reversible error in identifying alternative work which does not exist in significant numbers in the national or regional economy and improperly rejected Glasscock's testimony. (#15, at 1).

---

[1] AR refers to the Administrative Record.

**STANDARD OF REVIEW**

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. CONST. amend. V. Social security claimants have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When, as here, the Commissioner of Social Security renders a final decision, which denies a claimant's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The District Court's review of the Commissioner's decision is limited. The court reviews the Commissioner's decision to determine whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The issue before the court is, therefore, narrow. It is not whether the Commissioner could have reached a different conclusion, which the record may support. It is, rather, whether the decision is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining "a mere scintilla" of evidence); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (stating that if the evidence supports more than one interpretation, the court must defer to the Commissioner's interpretation). Stated simply, the Commissioner's decision will be upheld if it has any support in the record. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case de novo, or overturn the Commissioner's decision if the evidence preponderates against it).

**DISCUSSION**

Glasscock alleges two errors: First, that the ALJ did not obtain proper vocational testimony and reasoning when finding Glasscock could perform a significant number of jobs in the national and local economy; and Second, that the ALJ improperly found Glasscock not credible.

The record establishes that the ALJ analyzed the record, appropriately obtained vocational expert ("VE") opinion testimony, and considered Glasscock's claims of disability in finding Glasscock could perform a limited range of sedentary work. Glasscock's attorney was present at the time of the ALJ hearing and did not object to the vocational testimony. The ALJ further gave Glasscock's subjective complaints some weight, limiting her RFC to a range of sedentary work, but found that Glasscock's testimony, including use of illegal drugs, daily activities, and claims of hallucinations, were inconsistent and that Glasscock was found to exaggerate her symptoms to an examining doctor, were evidence that Glasscock was not credible.

**A. The ALJ Appropriately Found Glasscock Could Perform Other Work**

Glasscock alleges that the ALJ inappropriately accepted the testimony of the VE in finding Glasscock could perform a significant number of jobs that exist in the national economy. However, the ALJ's acceptance of the VE's testimony was reasonable, and supported by substantial evidence.

At step five, the Commissioner must present substantial evidence showing there were jobs that exist in significant numbers in the national economy that Glasscock could perform. *See* 20 C.F.R. §§ 404.1520, 416.920. "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, at 1214 n.1 (9th Cir. 2005). The Commissioner may satisfy this burden at step five by relying on the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2, or, when a claimant has significant nonexertional limitations, or the case involves complex vocational issues, by obtaining vocational expert testimony. 20 C.F.R. §§ 404.1566(e), 416.966(e); Social Security Ruling (SSR) 83-14, 1983 WL 31254, *4 *5; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

Here, the ALJ appropriately began the step 5 analysis by determining whether Glasscock was disabled when applying the Medical-Vocational Rules (the "Grids").  AR 37. The ALJ determined that a person with Glasscock's age and education, limited to a sedentary exertional RFC would not be disabled under the Grids.  AR 37. However, because the ALJ found Glasscock had several non-exertional limitations, the ALJ also called upon the testimony of a VE to determine whether other jobs still existed in which the Glasscock could perform.  AR 37-38, 76-84. The ALJ was entitled to rely on the vocational expert's testimony on this issue. *Bayliss*, 427 F.3d 1211, at 1218. "A VE's recognized expertise provides the necessary foundation for his or her testimony" and, therefore, "no additional foundation is required." *Id.* Indeed, during the hearing, Glasscock was represented by counsel, and did not object to the VE's qualifications or methodology during the hearing.  AR 76-84.

The VE testified to at least three jobs that Glasscock could perform.  AR 37-38, 76-84. The VE noted hundreds of thousands of these jobs were available in the national economy, and by multiplying the national number by a half of one percent, more than two thousand of these jobs would be available locally (Southern and Northern Nevada, two regions relevant to this inquiry).  AR 37-38, 76-84. Thus, the VE's testimony provided substantial evidence of a significant number of other jobs that the Glasscock could perform. *See Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (the ALJ can meet the agency's burden of proving that other work exists in significant numbers by the testimony of a vocational expert, or by reference to the Medical-Vocational Guidelines (the grids) at 20 C.F.R. pt. 404, subpt. P, app. 2); *Osenbrock*, 240 F.3d at 1162 (testimony of a vocational expert witness is sufficient evidence of other jobs that Claimant can perform). Courts have found anywhere from several hundred to a couple thousand jobs sufficient to be a significant number of jobs a claimant could perform. See *Moore v. Apfel*, 216 F.3d 864, 869-70 (9th Cir. 2000) ("the VE found that there were 7,700 regional and 125,000 national jobs appropriate for Moore's situation. This was substantial evidence to support the finding of the ALJ that Moore was not disabled"); *Moncada v. Chater*, 60 F.3d

521, 524 (9th Cir. 1995) (2,300 jobs in county; 64,000 nationally a significant number); *Barker v. Sec'y of Health and Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (citing with approval decisions finding several hundred jobs "significant" for purposes of determining a claimant's residual functional capacity).

Glasscock has attached to her motion copies of labor statistics (#15-1 & 15-2), asking this court to use these statistics to conclude that the ALJ's determination (admittedly based on data provided by the VE during the hearing before the ALJ) was data on which "no reasonable mind" could accept, relying on *Farias v. Colvin* 519 Fed Appx 439, docket no. 11-57088 (9th Cir. May 20, 2013)

In Farias, the court held that:

> No "reasonable mind" could accept the employment numbers proffered by the VE as substantial evidence that someone with Farias' characteristics and residual functional capacity (RFC) could perform the job of hostess (DOT 349.667–014). See *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). DOT 349.667–014 corresponds to the occupation of a head host/hostess of a dance hall, who:
>
>> Introduces unaccompanied persons at dancehall to HOSTS/HOSTESSES, DANCE HALL (amuse. & rec.), explaining procedure of engaging social partner. Inspects dress of HOSTS/HOSTESSES, DANCE HALL (amuse. & rec.) to ensure that they present clean and pleasing personal appearance. Attempts to distribute patrons equally among HOSTS/ HOSTESSES, DANCE HALL (amuse. & rec.).
>
> Dictionary of Occupational Titles 349.667–014, *available* at 1991 WL 672884.
>
> A reasonable mind would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy. The most plausible explanation appears to be that the VE properly testified that a person with Farias' characteristics and RFC could perform the job requirements of head dance hall hostess but erroneously provided employment data for restaurant hostess—an occupation that exists in far larger numbers. Notably, the employment numbers reported by the Bureau of Labor Statistics for the occupation of

restaurant host/hostess are very similar to the numbers the VE proffered for the job of head dance hall hostess. See Hosts and Hostesses, Restaurant, Lounge, and Coffee Shop, Bureau of Labor Statistics, http://www.bls.gov/oes/current/oes359031.htm (341,400 such jobs exist nationally based on the most current BLS data); News, Bureau of Labor Statistics (May 1, 2009), http://www.bls.gov/news.release/archives/ocwage_05012009.pdf (349,990 such jobs existed nationally in 2008). The ALJ's conclusion is therefore not supported by substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.2007).

In Farias, the Court of Appeals used the Bureau of Labor Statistics to provide an explanation for the ALJ's patently erroneous acceptance of testimony that there currently existed 342,000 head dance hall hostesses in the national economy. As a result, remand was required in that case. The testimony of the VE in this case is not analogous. As noted above, the record establishes that substantial evidence supports the ALJ's determination.

**B. The ALJ Properly Found Glasscock Not Credible**

Glasscock also claims that the ALJ's decision is devoid of a credibility analysis. However, the ALJ's decision discusses and analyzes Glasscock's credibility throughout. AR 20 (noting lack of treatment for migraines and shortness of breath), AR 23 (inconsistent statements about use of drugs where Glasscock stated at hearing she never used illegal drugs but other times was found to use drugs in the objective record), AR 24 (noting that Glasscock has only recently undergone conservative, infrequent treatment), AR 26 (medical notes from 2009 to 2011 that Glasscock was not limited in her daily activities with normal physical examination), AR 27 (noted past drug use to examining psychologist), AR 28 (noted missing scheduled appointments), AR 29 (inconsistent accounts of daily activity to Dr. Belmont when compared to her hearing testimony that detracts from Glasscock's credibility), AR 29-30 (noting evidence from a psychological test that Glasscock had a "very high probability that [she] endorsed the items inaccurately" suggesting exaggeration), AR 30 (noting Dr. Belmont's conclusion that Glasscock is an inadequate and inconsistent historian), AR 29-30 (noting

1 inconsistent claims of hallucinations), AR 31 (noting treatment for mental illness only began after
2 disability application), AR 34 (doctor noting Glasscock self-prescribed a cane for alleged falls and found
3 no objective support for assertion that she could not walk more than a block without a cane).

4 Congress expressly prohibits granting disability benefits based on a claimant's subjective
5 complaints. 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not
6 alone be conclusive evidence of disability"); 20 C.F.R. § 404.1529(a) (an ALJ "will consider" all of a
7 claimant's statements about symptoms including pain, but "statements about your pain or other
8 symptoms will not alone establish that you are disabled"). "An ALJ cannot be required to believe every
9 allegation of [disability], or else disability benefits would be available for the asking, a result plainly
10 contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ's
11 credibility finding must be properly supported by the record and sufficiently specific to ensure a
12 reviewing court that she did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas v.*
13 *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir.
14 1991) (en banc)).

15 Here, a review of the decision shows the ALJ provided many valid bases for finding Glasscock
16 not credible and supported that decision with substantial evidence.

17 In making a credibility finding, the ALJ needs to be "sufficiently specific to make clear to the
18 individual and to any subsequent reviewers the weight the adjudicator gave to the individual's
19 statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p. Here, the ALJ properly
20 found Glasscock not credible for a long list of contrary allegations. *See Tommasetti v. Astrue*, 533 F.3d
21 1035, 1039 (9th Cir. 2008) (finding an ALJ may consider "ordinary techniques of credibility evaluation,
22 such as … prior inconsistent statements concerning [her] symptoms" when finding that the claimant
23 "appears less than candid").

For example, Glasscock said she had never used illegal drugs at the hearing, but admitted to doctors she had used many illegal drugs in the past. AR 23, 28, 59, 352. *See Thomas*, 278 F.3d at 959 (finding an ALJ may discredit a claimant when the record "presents conflicting information about her drug and alcohol usage"). Similarly, Glasscock's comments regarding her daily activities were inconsistent. AR 26, 29, 252, 317, 353. For example, Glasscock told Teri F. Belmont, Ph.D., that she has long bouts of sleepiness and wakefulness and during wakeful times she would go out and walk around to look at people (although she claimed not to do this anymore) or go over to her wife's grandkids' house to play with the children. AR 29, 354. Glasscock also was assessed by her treating doctors as having no limitations in her everyday activities. AR 26, 27, 29, 252, 317. At the hearing, however, Glasscock stated she cannot move, cannot go anywhere, and that she stays in her apartment and in bed 95 percent of the day. AR 29, 56-57. Lastly, Glasscock told Dr. Belmont that she suffered from hallucinations constantly, hearing voices and seeing her cats in the doctor's office (AR 29, 355-56). However, treatment records show Glasscock reported no delusional thoughts, hallucinations, or illusions. AR 30, 324.

These numerous inconsistencies with claims of hallucinations, drug use, and activities of daily living were properly noted by the ALJ in finding Glasscock not credible. *See* 20 C.F.R. § 404.1529(c)(3)(i) ("[f]actors relevant to [a claimant's] symptoms, such as pain, which we consider include: (i) [the claimant's] daily activities"); *see also Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility," including "the claimant's daily activities").

The ALJ also noted that Glasscock was not credible due to evidence of exaggeration. AR 29-30. *See Tonapetyan*, 242 F.3d at 1148 (noting evidence of symptom exaggeration is a valid basis for discounting a claimant's claims of disability). In fact, Dr. Berger opined that Glasscock was an "inadequate and inconsistent historian" by "consciously exaggerate[ing] her current array of emotional, cognitive, and somatic symptoms both during interview and on the MMPI-2 [test]." AR 29-30, 357-358.

On the MMPI-2, Glasscock endorsed answers that created "a very high probability that she has endorsed the items inaccurately by reporting symptoms and behaviors that are rarely seen even in psychiatric patients." AR 29-30, 357. Dr. Berger found these results were very likely due to Glasscock's "attempt at making a self-unfavorable reporting of the extent and severity of her psychopathology." AR 29-30, 357. These apparently deliberate exaggerations and inaccuracies to an examining doctor was appropriately noted by the ALJ in finding Glasscock not credible. AR 29-30, 357.

As outlined above, the ALJ also noted Glasscock's lack of treatment and conservative treatment as evidence that her claims are not credible. AR 20. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant received "minimal" and "conservative" treatment); *Burch*, 400 F.3d at 681 (finding lack of consistent treatment "powerful evidence" that a plaintiff's claims of disability are not credible). Given the clear evidence of exaggeration in this case, along with numerous other inconsistencies, the ALJ has not arbitrarily discredited Glasscock in this case. *See Tommasetti*, 533 F.3d at 1039; *Thomas*, 278 F.3d at 958.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Glasscock's Motion to Remand (#15) be DENIED.

IT IS ALSO RECOMMENDED that the Cross Motion to Affirm (#18) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 22nd day of January, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE